UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SHAWN ELLEN STEMM,

    Plaintiff,

v.                                                      Case No. 8:19-cv-1022-T-CPT

ANDREW M. SAUL,
Commissioner of Social Security,

    Defendant.
_____/

**O R D E R**

The Plaintiff seeks judicial review of the Commissioner's denial of her claim for Disability Insurance Benefits (DIB). For the reasons discussed below, the Commissioner's decision is reversed, and the case is remanded.

I.

The Plaintiff was born in 1965, has at least a high school education, and has past relevant work experience as both a nurse and a quality assurance coordinator. (R. 26). In August 2015, the Plaintiff applied for DIB alleging disability as of March 4, 2015, due to lupus, anemia, diabetes, arthritis, depression, anxiety, fibromyalgia, sacroiliitis, neuritis, neuralgia, radiculitis, extreme fatigue, hyper cholesterol, lumbar radiculopathy, lumbosacral spondylosis, degenerative joints, and low vitamin B12.

(R. 211-12, 240). The Social Security Administration denied the Plaintiff's application both initially and on reconsideration. (R. 86, 103).

At the Plaintiff's request, an Administrative Law Judge (ALJ) conducted a hearing on the matter on March 22, 2018. (R. 1356-97). The Plaintiff was represented by counsel at that hearing and testified on her own behalf. *Id.* A vocational expert (VE) also testified. *Id.*

In a decision dated July 5, 2018, the ALJ found that the Plaintiff: (1) met the insured status requirements through December 31, 2020, and had not engaged in substantial gainful activity since her alleged onset date of March 4, 2015; (2) had the severe impairments of obesity, hip bursitis, rheumatoid arthritis, diabetes mellitus, migraine headaches, and status post lumbar fusion; (3) did not, however, have an impairment or combination of impairments that met or medically equaled the severity of any of the listed impairments; (4) had the residual functional capacity (RFC) to perform sedentary work with some additional postural, manipulative, and environmental limitations; and (5) based on the VE's testimony, could not engage in her past relevant work but was capable of making a successful adjustment to other jobs that exist in significant numbers in the national economy. (R. 15-27). In light of these findings, the ALJ concluded that the Plaintiff was not disabled. (R. 27).

The Appeals Council denied the Plaintiff's request for review. (R. 1-6). Accordingly, the ALJ's decision became the final decision of the Commissioner.

II.

The Social Security Act (the Act) defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 404.1505(a).[1] A physical or mental impairment under the Act "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

To determine whether a claimant is disabled, the Social Security Regulations (Regulations) prescribe "a five-step, sequential evaluation process." *Carter v. Comm'r of Soc. Sec.*, 726 F. App'x 737, 739 (11th Cir. 2018) (citing 20 C.F.R. § 404.1520(a)(4)).[2] Under this process, an ALJ must determine whether the claimant: (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) has the RFC to engage in her past relevant work; and (5) can perform other jobs in the national economy given her RFC, age, education, and work experience. *Id.* (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). While the claimant has the burden of proof

---

[1] Unless otherwise indicated, citations to the Code of Federal Regulations are to the version in effect at the time of the ALJ's decision.
[2] Unpublished opinions are not considered binding precedent but may be cited as persuasive authority. 11th Cir. R. 36-2.

3

through step four, the burden temporarily shifts to the Commissioner at step five. *Sampson v. Comm'r of Soc. Sec.*, 694 F. App'x 727, 734 (11th Cir. 2017) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)). If the Commissioner carries that burden, the claimant must then prove that she cannot perform the work identified by the Commissioner. *Id*. In the end, "the overall burden of demonstrating the existence of a disability . . . rests with the claimant." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018) (quoting *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001)).

A claimant who does not prevail at the administrative level may seek judicial review in federal court provided the Commissioner has issued a final decision on the matter after a hearing. 42 U.S.C. § 405(g). Judicial review is limited to determining whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence. *Id.*; *Hargress v. Soc. Sec. Admin.*, *Comm'r*, 883 F.3d 1302, 1305 n.2 (11th Cir. 2018) (citation omitted). Substantial evidence is "more than a mere scintilla" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations and quotations omitted). In evaluating whether substantial evidence supports the Commissioner's decision, the Court may not decide the facts anew, make credibility determinations, or re-weigh the evidence. *Ross v. Comm'r of Soc. Sec.*, 794 F. App'x 858, 860 (11th Cir. 2019) (per curiam) (quoting *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005)). "[W]hile the court reviews the Commissioner's decision with deference to [his] factual findings, no such deference is given to [his] legal

4

conclusions." *Keel-Desensi v. Berryhill*, 2019 WL 1417326, at *2 (M.D. Fla. Mar. 29, 2019) (citations omitted).

### III.

The Plaintiff raises three challenges on appeal: (1) the ALJ erred by not developing the record as to whether the Plaintiff qualified for a closed period of disability between her alleged onset date on March 4, 2015, and a back surgery she underwent in July 2016; (2) the ALJ erred in finding that the Plaintiff's mental impairments were non-severe and did not result in any work-related limitations; and (3) the ALJ erred in neglecting to consider the Plaintiff's diabetic neuropathy in assessing her RFC. (Doc. 14). The Commissioner counters that the ALJ applied the correct legal standards and that his decision is supported by substantial evidence. *Id*. Upon a thorough review of the record and the parties' submissions, the Court finds that the Plaintiff's second and third arguments have merit requiring reversal.

### A.

The crux of the Plaintiff's second argument is that the ALJ committed several mistakes in determining the severity of the Plaintiff's mental impairments, including by failing to appropriately consider the opinions of the Plaintiff's treating psychiatrist, Emilio Montero, M.D. (Doc. 14 at 26-28). The Court agrees that the ALJ erred in his evaluation of Dr. Montero's assessment and in his consideration of the Plaintiff's mental condition overall.

The Court begins with an overview of the regulatory framework governing an ALJ's obligations with respect to opinion evidence and situations where, as in this case, a claimant raises a colorable claim of a mental impairment.

In reviewing an individual's disability claim, an ALJ "must consider all medical opinions in a claimant's case record, together with other relevant evidence." *McClurkin v. Soc. Sec. Admin.*, 625 F. App'x 960, 962 (11th Cir. 2015) (per curiam) (citing 20 C.F.R. § 404.1527(b)).[3] Medical opinions are statements from, *inter alia*, physicians and psychologists "'that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite [her] impairment(s), and [the claimant's] physical or mental restrictions.'" *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178-79 (11th Cir. 2011) (quoting 20 C.F.R. § 404.1527(a)(2)).

An ALJ must state with particularity the weight given to a medical opinion and the reasons therefor. *Id.* at 1179. In rendering this determination, an ALJ must assess: (1) whether the doctor has examined the claimant; (2) the length, nature, and extent of the doctor's relationship with the claimant; (3) the medical evidence and explanation supporting the doctor's opinion; (4) the degree to which the doctor's opinion is consistent with the record as a whole; and (5) the doctor's area of specialization. 20 C.F.R. § 404.1527(c). While an ALJ is required to consider each of

---

[3] Although this regulation has been amended effective March 27, 2017, the new regulation only applies to applications filed on or after that date. *See* 20 C.F.R. § 404.1520c. Because the Plaintiff's application was submitted in August 2015, the older version of the regulation governs here.

these factors, it is not necessary that he explicitly address them in his decision. *Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 833 (11th Cir. 2011).

The Regulations set forth three tiers of medical opinions: (1) treating physicians; (2) non-treating, examining physicians; and (3) non-treating, non-examining physicians. *Himes v. Comm'r of Soc. Sec.*, 585 F. App'x 758, 762 (11th Cir. 2014) (per curiam) (citing 20 C.F.R. § 404.1527(a)(2), (c)(1)-(2)). Treating doctors' opinions are accorded the most deference because there is a greater likelihood that these healthcare providers will "be able to give a more complete picture of the [claimant's] health history." *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1259 (11th Cir. 2019) (citing 20 C.F.R. § 404.1527(c)(2)). As a result, the ALJ must give the testimony of a treating physician substantial or considerable weight unless "good cause" is shown to the contrary. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (per curiam). Good cause exists where: (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the physician's own medical records. *Phillips*, 357 F.3d at 1240-41; *see* 20 C.F.R. § 404.1527(c)(2) (stating that "controlling weight" is given to a treating physician's opinion if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record."). If an ALJ finds that the treating physician's medical opinion should be accorded less than substantial or considerable weight, the ALJ must clearly articulate reasons showing good cause for discounting the opinion, and those

reasons must be supported by substantial evidence. *Schink*, 935 F.3d at 1259 ("We have explained that the ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician.") (citing *Winschel*, 631 F.3d at 1179).

In addition to the above, the Regulations governing an ALJ's evaluation of opinion evidence offered by medical sources draw a distinction between "acceptable medical sources" and "other sources." Social Security Ruling (SSR) 06-03p, 2006 WL 2329939, at *1-6 (S.S.A. Aug. 9, 2006) (explaining how the SSA assesses opinions from different types of evidentiary sources).[4] "Acceptable medical sources" include licensed physicians as well as licensed or certified psychologists, while "other sources" include physician assistants, nurse practitioners, and licensed clinical social workers. *Id.* at *1-2; *Anteau v. Comm'r of Soc. Sec.,* 708 F. App'x 611, 613 (11th Cir. 2017) (per curiam). Unlike "acceptable medical sources," the opinions of "other sources" are "not medical opinions . . . entitled to any special significance or consideration," *Lange v. Comm'r of Soc. Sec.*, 2019 WL 643714, at *4 (M.D. Fla. Feb. 15, 2019) (citations omitted), and "cannot establish the existence of a medically determinable impairment," *Anteau*, 708 F. App'x at 613 (citation omitted).

Where, as here, a claimant presents a colorable claim of a mental impairment, the Regulations mandate that the ALJ apply the Psychiatric Review Technique (PRT). *Moore*, 405 F.3d at 1213-14; 20 C.F.R. § 404.1520a. This technique requires that the

---

[4] SSRs "are agency rulings published under the Commissioner's authority" and are generally afforded deference by the courts. *Klawinski v. Comm'r of Soc. Sec.*, 391 F. App'x 772, 775 (11th Cir. 2010) (per curiam) (citing *Sullivan v. Zebley*, 493 U.S. 521, 531 n.9 (1990)).

ALJ assess the Plaintiff's mental impairments using the following four broad functional areas—known as the Paragraph B criteria—(1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself.  20 C.F.R. § 404.1520a(c)(3).

B.

In this case, the record reflects that Dr. Montero provided a letter and mental RFC assessment of the Plaintiff in September 2017.  (R. 1294-96).  In his letter, Dr. Montero stated that he treated the Plaintiff for Generalized Anxiety Disorder and that he prescribed the Plaintiff Xanax.  (R. 1294).  In his accompanying mental RFC assessment, Dr. Montero opined that the Plaintiff had moderate restrictions in all mental health-related work activities, including understanding, memory, concentration, social interaction, and the ability to adapt to various work situations, and that such mental conditions had existed since 2015.  (R. 1295-96).

In his decision, the ALJ performed the PRT at step two of the sequential evaluation process and found that the Plaintiff had no limitation in the first and fourth functional areas, and a mild limitation in the second and third.  At step four, the ALJ elected to give "little weight" to Dr. Montero's mental RFC assessment, finding that the doctor's conclusions that the Plaintiff suffered moderate limitations were "not supported by the record as a whole."  (R. 25).  In rendering this finding, the ALJ referenced his step two "analysis of the [Paragraph] 'B' criteria pertaining to the mental

9

listings." *Id*. The ALJ's determination regarding Dr. Montero's opinions is flawed in several respects.

To begin, the ALJ's justification for discounting Dr. Montero's assessment is conclusory and does not contain a clear rationale as to how the ALJ arrived at his determination. *See Winschel*, 631 F.3d at 1179 ("[A]n ALJ may disregard a treating physician's opinion, but he 'must clearly articulate [the] reasons' for doing so'") (quoting *Phillips*, 357 F.3d at 1240-41); *see also Davis v. Comm'r of Soc. Sec.*, 449 F. App'x 828, 833 (11th Cir. 2011) (per curiam) (noting that, unless an ALJ "clearly articulates" good reasons for disregarding a treating physician's opinion, his decision will not be affirmed on appeal). While the ALJ did employ certain phrasing that might otherwise support a finding of good cause (i.e., his claim that Dr. Montero's opinion was "not supported by the record as a whole" (R. 25)), the ALJ failed to sufficiently explain the basis for his conclusion. *See Hubbell-Canamucio v. Comm'r of Soc. Sec.*, 2016 WL 944262, at *4 (M.D. Fla. Mar. 14, 2016) (finding conclusory statements that an opinion is inconsistent with or not supported by the record are insufficient to show good cause for rejecting a treating doctor's opinion unless the ALJ articulates factual support) (citing *Kahle v. Comm'r of Soc. Sec.*, 845 F. Supp. 2d 1262, 1272 (M.D. Fla. 2012)); *Okeefe v. Comm'r of Soc. Sec.*, 2016 WL 362435, at *7 (M.D. Fla. Jan. 29, 2016) (same); *Corron v. Comm'r of Soc. Sec.*, 2014 WL 235472, at *6-7 (M.D. Fla. Jan. 22, 2014) (finding the ALJ's statement that the treating doctor's opinion was "not supported by objective medical findings and [was] inconsistent with the evidence of record when considered in its entirety" stated good cause to give the opinion little weight, but the ALJ's failure

to articulate evidence supporting that reason precluded the court from determining whether it was supported by substantial evidence); *Freeman v. Comm'r of Soc. Sec.*, 2013 WL 6244527, at *7 (M.D. Fla. Dec. 3, 2013) ("Although the ALJ used the triggering language for the 'good cause' exception, his conclusions are unsubstantiated by reference to specific evidence in the record, and provide the reviewing Court with little guidance in determining whether the findings are supported by substantial evidence.") (citations omitted); *Anderson v. Astrue*, 2013 WL 593754, at *5 (M.D. Fla. Feb. 15, 2013) (concluding that the ALJ must do more than recite a good cause reason to reject a treating physician's opinion and must articulate evidence supporting that reason) (citing authority); *Paltan v. Comm'r of Social Sec.*, 2008 WL 1848342, at *5 (M.D. Fla. Apr. 22, 2008) ("The ALJ's failure to explain how [the treating doctor's] opinion was 'inconsistent with the medical evidence' renders review impossible and remand is required.").

The ALJ's mere reference to his Paragraph B analysis at step two does not cure this deficiency. Notably, the ALJ did not mention or cite at that step Dr. Montero's opinions.

Nor does the ALJ's step two discussion shed light on his stated reasons for discounting Dr. Montero's assessment. By way of example, the ALJ ostensibly found Dr. Montero's determination that the Plaintiff had moderate limitations in concentration and persistence to be unsupported because the ALJ found only a mild limitation in this functional domain. (R. 19). The ALJ predicated his finding on (1) a neurosurgical examination stating that the Plaintiff's concentration and attention were

11

"within normal limits;" (2) the initial evaluation of a licensed social worker, which—the ALJ claimed—indicated that the Plaintiff's "mental diagnoses ha[d] been generally characterized as '*mild*' in severity;" (3) "various clinical records from 2016" that described the Plaintiff as "negative for anxiety, depression, and insomnia;" and (4) the fact that the Plaintiff's "diminished energy secondary to mental symptomology [wa]s referenced only minimally in clinical records." (R. 19) (internal citations omitted).

These reasons provided by the ALJ do not amount to good cause for rejecting Dr. Montero's opinion. The Court fails to see how an entry in one neurosurgical consult (R. 1253) and the assessment of a licensed social worker (who is an "other source") that the Plaintiff mental diagnoses were mild (R. 1314) overrides the opinion of the Plaintiff's long-time treating psychiatrist (who is an "acceptable medical source"), especially without some further clarification from the ALJ. The Court notes in this regard that the ALJ provides no explanation as to why he credited the social worker over Dr. Montero. In addition, the ALJ fails to elucidate why entries in certain medical records that the Plaintiff was negative for anxiety, depression, and insomnia or that she complained minimally about diminished energy would contradict Dr. Montero's assessment regarding the Plaintiff's restrictions in her ability to concentrate.

The Commissioner's tepid efforts to bolster the ALJ's justification for rejecting Dr. Montero's opinion are unconvincing. While the Commissioner endeavors to add substance to the ALJ's reasoning by fleshing out purported contradictions between the record and Dr. Montero's evaluation (Doc. 14 at 30), the ALJ did not perform such an analysis in his decision. The Court must review the ALJ's assessment of Dr.

Montero's findings based upon what the ALJ said, not upon the Commissioner's post-hoc rationalization. *See Watkins v. Comm'r of Soc. Sec.*, 457 F. App'x 868, 871-72 (11th Cir. 2012) ("We cannot affirm based on a post hoc rationale that 'might have supported the ALJ's conclusion.'") (citing *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984)); *Dempsey v. Comm'r of Soc. Sec.*, 454 F. App'x 729, 733 (11th Cir. 2011) (per curiam) (same) (citing *Owens*).

The Court is likewise not persuaded by the Commissioner's suggestion that the ALJ's affording significant weight to the opinions of certain state agency non-examining doctors who reviewed the Plaintiff's medical records provides substantial evidence for the ALJ's finding. It is well established that the opinion of a non-examining doctor cannot, by itself, supply the requisite good cause for rejecting the assessment of a treating physician. *Coley v. Comm'r of Soc. Sec.*, 771 F. App'x 913, 917 (11th Cir. 2019) (per curiam) (providing that a non-examining doctor's opinion does not constitute the good cause needed to reject a treating doctor's opinion) (citing *Broughton v. Heckler*, 776 F.2d 960, 961-62 (11th Cir. 1985)); *Brock v. Comm'r, Soc. Sec. Admin.*, 758 F. App'x 745, 750 (11th Cir. 2018) (per curiam) (providing that the opinions of non-examining doctors do not amount to good cause for rejecting the opinion of a treating physician) (citing *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988)); *Martz v. Comm'r, Soc. Sec. Admin.*, 649 F. App'x 948, 959 (11th Cir. 2016) (recognizing that a non-examining doctor's opinion, by itself, does not constitute good cause for according less weight to a treating doctor's opinion) (citing *Johns v. Bowen*, 821 F.2d. 551, 554 (11th Cir. 1987)).

And, while an ALJ may in certain circumstances credit a non-examining doctor's opinion over that of a treating doctor, the ALJ must first articulate good cause for discounting the treating physician's opinion, which the ALJ did not do here. *See Flowers v. Comm'r of Soc. Sec.*, 441 F. App'x 735, 743 (11th Cir. 2011) (per curiam) (finding that the ALJ did not err in giving more weight to a consulting doctor's opinion "because the ALJ articulated good cause for discounting the opinions of [the claimant's] treating and examining doctors and because the consulting doctor's opinion was consistent with the medical record, including the treating and examining doctors's own clinical findings").

Even assuming *arguendo* that the ALJ did not err in his consideration of Dr. Montero's opinion, the ALJ's step-four finding regarding the Plaintiff's mental RFC is nonetheless flawed. In rendering an RFC determination, ALJ must evaluate the claimant's maximum ability to do work despite her impairments, both severe *and* non-severe. *Schink*, 935 F.3d at 1268-69 ("Consideration of all impairments, severe and non-severe, is required when assessing a claimant's RFC."). The RFC analysis therefore represents a more detailed evaluation of the functional import of a claimant's impairments than that required at step two. *Id*. at 1269 (noting that "the mental RFC assessment used at steps [four] and [five] of the process 'requires a more detailed assessment by itemizing various functions contained in the broad categories found in [P]aragraph B'"); *see also* Social Security Ruling (SSR) 96-8p, 1996 WL 374184, at *4 (July 2, 1996) (observing that the criteria used to rate severity of mental impairments at step two do not amount to an RFC assessment and that a "more detailed" evaluation

14

is mandated at steps four and five, requiring "itemizing various functions contained in the broad" functional areas).

By the Court's review, the ALJ did not satisfy his obligations on this front either. While acknowledging that his Paragraph B findings at step two were not a substitute for the more thorough mental RFC evaluation necessitated at steps four and five (R. 20), the ALJ's subsequent discussion regarding the Plaintiff's RFC and the Plaintiff's ability to work contains no such assessment, *see* (R. 20-27). The ALJ likewise did not address in any meaningful way the Plaintiff's testimony at the hearing that she experienced "brain fog" and that her "physical conditions affect[ed] her ability to focus and concentrate." (R. 21). And, regardless of whether the Plaintiff's asserted problems with concentration stemmed from her physical or mental conditions, or some combination of the two, the ALJ did not adequately address these problems, either in rejecting the Plaintiff's subjective complaints or in discounting Dr. Montero's opinion.[5]

In addition, although the ALJ mentions at step two that the Plaintiff had the medically determinable impairment of "affective disorder" (R. 18), nowhere in his decision did he discuss the Plaintiff's allegations that she suffered from anxiety, despite the fact that the Plaintiff claimed anxiety as a basis for her disability (R. 240) and

---

[5] The Court notes that another of the Plaintiff's treating doctors, Ann Winny, M.D., likewise opined that the Plaintiff's symptoms would "often" interfere with her concentration and attention. (R. 767). The ALJ ignored Dr. Winny's assessment, except to give one aspect of it significant weight. (R. 25). The remainder of Dr. Winny's opinion is left wholly unaddressed by the ALJ.

despite the fact that Dr. Montero diagnosed the Plaintiff with Generalized Anxiety Disorder (R. 1294).  The ALJ's RFC analysis similarly contains no reference to the Plaintiff's diagnosed anxiety or the possible limitations resulting from that condition.

These deficiencies constitute reversible error.  As has long been established, "the ALJ must consider every impairment alleged," and the failure to evaluate whether a claimant's alleged "impairments were sufficiently severe—either singularly or in combination—to create a disability" warrants remand.  *Gibson v. Heckler*, 779 F.2d 619, 623 (11th Cir. 1986) (reversing the Commissioner's decision where ALJ failed to make findings with respect to claimant's claimed impairments of psoriasis, nervousness, anxiety, dizziness, and forgetfulness).  To demonstrate that all the impairments, severe or non-severe, have been considered in combination, the ALJ must make "'specific and well-articulated findings as to the effect of the combination of impairments.'" *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 825 (11th Cir. 2010) (per curiam) (quoting *Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984)); *see also Walker v. Bowen*, 826 F.2d 996, 1001-02 (11th Cir. 1987) ("[I]t is the duty of the ALJ to make specific and well-articulated findings as to the effect of the combination of impairments and to decide whether the combined impairments cause the claimant to be disabled.") (internal quotations omitted).  The ALJ's decision here does not abide by these standards.

That the ALJ may have considered the Plaintiff's mental conditions in his RFC assessment *sub silentio* and impliedly determined that they did not significantly limit the Plaintiff's work-related mental abilities does not remedy this error.  *Schink*, 935

F.3d at 1269. As the Eleventh Circuit noted in *Schink*, "our precedent holds [that an] ALJ's 'failure . . . to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal' in its own right." *Id*. (quoting *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994)); *see also Hudson v. Heckler*, 755 F.2d 781, 785 (11th Cir. 1985) (per curiam) (holding that failure to consider a claimant's impairments in combination "requires that the case be vacated and remanded for the proper consideration").

C.

The Plaintiff's third claim of error relating to the ALJ's consideration of her diabetic neuropathy similarly compels remand. As noted above, the ALJ determined at step two that the Plaintiff's diabetes mellitus was severe. (R. 17). When thereafter discussing this condition at step four, the ALJ stated:

> [B]y way of history, the presence of this impairment appears to date back to 2011 and has been characterized as "Type II." However, I note that this condition has been routinely described as without complication, stable on medications and well-controlled, as well as the claimant maintaining satisfactory A1C levels.
>
> Thus, while the claimant's glucose levels have fluctuated to some degree, this condition remains non-insulin dependent, and the only treatment protocol and recommendations that appears to be in place are routine monitoring, use of oral medication as needed, strict dietary compliance and weight reduction. Additionally, I note this impairment has been characterized as "*mild*." Therefore, I find that the record is devoid [of] evidence detailing the diabetic condition, standing alone or in combination with other impairments, as resulting in debilitating limitations necessitating total disability.

(R. 24) (internal citations omitted).

This analysis by the ALJ is lacking insofar as it failed to take into account the record evidence that the Plaintiff suffered from peripheral neuropathy. By the Court's review, at least four doctors found the Plaintiff to have this condition. In March 2015, for example, Dr. Daniel Traviesa concluded that the Plaintiff had mild sensory polyneuropathy "probably related to diabetes" and noted episodes of numbness. (R. 690); *see also* (R. 1319) (Dr. Traviesa's October 11, 2017, diagnosis of diabetes mellitus with neuropathy). Another physician—Dr. Margarita Martinez-Reyes—similarly assessed the Plaintiff with neuropathy in July 2015 while noting that the Plaintiff's diabetes was "well controlled." (R. 707). Dr. Winny likewise believed that the Plaintiff had peripheral neuropathy as of December 2015. (R. 767). And, finally, consultative examiner Dr. Edwin Lamm found in January 2016 that the Plaintiff had a history of diabetic neuropathy involving her legs and feet (R. 775) and diagnosed her with, among other conditions, diabetes mellitus with diabetic peripheral neuropathy (R 776).

Notably, the ALJ entirely omits any discussion—both at step two and at step four—of the peripheral neuropathy that these doctors found the Plaintiff to have, ignored the Plaintiff's allegations that she had numbness in her legs and feet (R. 262-63), failed to address her report that problems with her hands caused her to drop things (R.1375), and apparently overlooked the fact that the state agency assessment at both the initial and reconsideration levels determined her peripheral neuropathy to be severe (R. 79, 95). Instead, the ALJ offered only that the Plaintiff's diabetes was routinely described as "controlled" and "without complication," while overlooking

those records that evidenced neuropathy. This too was error, and, as a result, the Court is without a sufficient basis to conclude that the ALJ considered the Plaintiff's condition as a whole. *See Gibson*, 779 F.2d at 623.

### D.

The Plaintiff's remaining argument is that the ALJ should have considered a closed period of disability. In a "closed period" case, the ALJ decides whether a claimant was disabled for a finite period that "started and stopped prior to the date of [the ALJ's] decision." *Mitchell v. Comm'r of Soc. Sec.*, 393 F. App'x 651, 652 (11th Cir. 2010) (per curiam) (quoting *Pickett v. Bowen*, 833 F.2d 288, 289 n.1 (11th Cir. 1987)).

Here, the Plaintiff did not file a claim for a closed period. Although she raised the matter before the Appeals Council following the ALJ's unfavorable decision (R. 334), she did not request that the ALJ consider a closed period of disability. Given the Court's ruling that remand is necessary on other grounds, however, the Court need not resolve this issue. *See Jackson v. Bowen*, 801 F.2d 1291, 1294 n.2 (11th Cir. 1986) (stating that where remand is required, it may be unnecessary to review other issues raised). Instead, the Plaintiff will have the opportunity on remand to make such a claim at the administrative level.

### IV.

For the foregoing reasons, it is hereby ORDERED:

1. The Commissioner's decision is reversed, and the case is remanded for further proceedings before the Commissioner consistent with this Order.

2. The Clerk is directed to enter Judgment in the Plaintiff's favor and to close the case.

3. The Court reserves jurisdiction on the matter of attorney's fees and costs pending further motion.

DONE and ORDERED in Tampa, Florida, this 30th day of September 2020.

*Christopher P. Tuite*
HONORABLE CHRISTOPHER P. TUITE
United States Magistrate Judge

Copies to:
Counsel of record